Date signed March 14, 2009



IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF MARYLAND
at GREENBELT

| | | | |
|---|---|---|---|
| In re: | * | | |
| Steven P. Kersner and Beatrice A. Kersner, | * | Case No. | 08-18590-TJC |
| | * | Chapter | 13 |
| Debtors | * | | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OF DECISION GRANTING MOTIONS
FOR RULE 9011 SANCTIONS**

Before the Court are two motions filed by Bobby and Mary Stafford (the "Movants"). The motions seek sanctions against Steven P. Kersner ("Kersner") and Beatrice A. Kersner (collectively, the "Debtors"), and their counsel, Eric Soderberg, all of whom oppose the motions. The Court held a hearing on the motions on February 24, 2008. For the reasons set forth herein, the Court will grant the motions and impose the sanctions described below.

**I.   FINDINGS OF FACT**

On December 27, 2000, Kersner filed a Chapter 7 bankruptcy case (Case No.00-23589). In an adversary proceeding in that case (Adv. Pro. No. 01-01131), the Movants' claim against Kersner was determined to be nondischargeable under 11 U.S.C. §523(a)(2). *See* Docket No. 25 in Adv. Pro. 01-01131. The parties do not dispute that

the amount of the Movants' nondischargeable claim against Kersner exceeds $225,000. Case No. 00-23589 was closed on February 4, 2005.

On April 6, 2007, Kersner filed a Chapter 13 petition (Case No. 07-13148), which, on his motion, was converted to Chapter 11 by order entered September 6, 2007. Kersner's motion expressly stated that his unsecured debt exceeded the statutory limit of $336,900 for an individual to be eligible to be a debtor in Chapter 13, as set forth in Bankruptcy Code §109(e).[1]  *See* Docket No. 40 in Case No. 07-13148.  Kersner's current counsel represented Kersner in Case No. 07-13148.

On April 15, 2008, the United States Trustee filed a motion to dismiss Case No. 07-13148, alleging that Kersner failed to file monthly operating reports, failed to pay the U. S. Trustee's quarterly fees, and was unable to confirm a Chapter 11 plan. *See* Docket No. 85 in Case No. 07-13148.  The case was dismissed by stipulation and consent order entered May 12, 2008.  At the time of the dismissal, Kersner had failed to file monthly operating reports for December 2007 and for January through April 2008.  There is no dispute that at the time Kersner filed Case No. 07-13148, his wages were the subject of the Movants' garnishment, and the garnishment was stayed during the thirteen-month life of that case.

This Chapter 13 case was filed July 1, 2008.  There is no dispute that the filing of the instant Chapter 13 case served to reinstate the stay with respect to the Movants' garnishment.

The Debtors filed their schedules on July 15, 2008 (Docket No. 13).  On Schedule E, they listed two unsecured priority claims in the total amount of $139,353.94, held by the Maryland Comptroller of the Treasury ($27,353.94) and the Internal Revenue

---

[1] All statutory references are to the U.S. Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

2

Service ($112,000.00). *See* Docket No. 13, p. 11. Neither claim is listed as contingent or unliquidated. Schedule F listed creditors holding unsecured claims in the total amount of $354,671.50. *See* Docket No. 13, pp. 12-15. None of those claims is listed as contingent or liquidated.

Taken together, these amounts greatly exceeded the $336,900 unsecured debt limit set forth in §109(e) for an individual to be eligible to be a Chapter 13 debtor. On their face, therefore, the Debtors' schedules established that Kersner was not eligible to be a Chapter 13 debtor.[2]

On July 17, 2008, the Debtors filed an emergency motion to extend the automatic stay pursuant to §362(c)(3). They claimed the stay should be extended past the thirty-day period provided in §362(c)(3)(A) because they filed the instant case in good faith. Movants opposed that motion and the Court held a hearing on July 28, 2008. At the hearing Kersner testified, among other things, that the schedules he had signed under penalty of perjury thirteen days earlier were wrong, and the total unsecured debts were actually less than the debt limitation of §109(e). The Court denied the motion, finding that the record did not establish that the Debtors filed the instant case in good faith.[3]

On July 29, 2008, Movants' counsel served Kersner and his counsel with a motion for sanctions under Bankruptcy Rule 9011 (the "First Sanctions Motion"). *See*

---

[2] There has been no dispute between the parties that, because the Movants' claim is against Kersner alone and is not joint with Beatrice, Beatrice is under the §109(e) debt limit. At the conclusion of the hearing held on July 28, 2008, Debtors' counsel stated he would file a motion to deconsolidate the cases – a very straightforward motion that would have allowed Beatrice Kersner to continue in Chapter 13.

[3] In this district, a determination by the Court not to extend the automatic stay under §362(c) is of limited utility to creditors who are pursuing contract or state law remedies against property of the estate. *See In re Tubman*, 364 B.R. 574 (Bankr. D.Md. 2007) (notwithstanding the denial of an extension of the automatic stay under §362(c)(3), the automatic stay continues in effect as to property of the estate). In a Chapter 13 case, postpetition wages are included as property of the estate. Therefore, Movants continued to be stayed from garnishing Kersner's wages even after the Court denied Debtors' motion to extend the automatic stay.

3

Certificate of Service, attached to Docket No. 46.  In this served but unfiled motion, Movants pointed out that Kersner's unsecured claims continued to exceed the statutory limit of §109(e), just as Kersner had expressly admitted when he converted Case No. 07-13148 from Chapter 13 to Chapter 11, as described above.  Movants asserted that no justification existed for filing a Chapter 13 case in which the schedules established that the unsecured debts exceeded the §109(e) limit.  Movants further stated that they understood the alleged justification for Kersner's Chapter 13 filing was that Kersner's counsel claimed the statutory limit in §109(e) was doubled for joint debtors.  Movants argued that this position was not warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law, and therefore was violative of Bankruptcy Rule 9011(b).[4]

Movants then filed a motion to dismiss the case on August 6, 2008, contending that the schedules established that the Debtors' unsecured debt exceeded the limit of §109(e).  *See* Motion to Dismiss Petition (Docket No. 21).  Debtors filed a response in which they stated that they would file amended Schedules D, E and F.  According to Debtors, the amended schedules would establish that their total unsecured debt was $306,955, well within the limit imposed by §109(e).  *See* Debtors' Response to Motion to Dismiss Petition (Docket No. 31).

The Court held a hearing on the motion to dismiss on August 26, 2008.  At the hearing the Debtors argued that the IRS and Maryland tax claims were secured claims and should not count against the unsecured debt limit of §109(e).  According to the

---

[4] In addition to §109(e), Movants also cited the oft-quoted treatise, Collier [on Bankruptcy], ¶ 109.06[4], and *In the Matter of Archibald*, 314 B.R. 876 (Bankr. S.D.Ga. 2004), both of which do make clear that the §109(e) debt limit is not doubled for joint debtors.

4

Debtors, treating the tax claims as secured claims would reduce the total unsecured debt below the limit of §109(e).

The Movants argued that under the Fourth Circuit decision of *In re Balbus*, 933 F.2d 246 (4th Cir. 1991), in calculating the amount of unsecured debt for purposes of §109(e), the Court must include in the calculation of unsecured debt the amount by which any secured creditors are undersecured. Stated otherwise, §506(a) applies to the determination of total unsecured debt for purposes of §109(e) eligibility. *See Balbus*, 933 F.2d at 247 (in determining whether the debtor has less than the unsecured debt limit of 109(e), "the court must add the amount of unsecured debt and the amount by which secured creditors are undersecured."). The Movants pointed out that, by the Debtors' own admission on Schedule B, the total value of the Debtors' assets equaled $48,635. *See* Docket No. 13, pp. 3-5.[5] Movants contended that given these asset values, under no circumstances could any material portion of the IRS or Maryland tax claims be treated as secured claims, rather than unsecured claims. Thus, according to Movants, Kersner remained substantially above the unsecured debt limit of §109(e).

In response, Debtors contended that Kersner was a party to an employment contract which ran through 2009 and would pay him at least $120,000 a year in base salary. Debtors did not produce the contract either prior to or at the hearing. They contended that the contract was an asset of the bankruptcy estate, that it had substantial value, and that the IRS tax lien attached to it prepetition. Debtors contended that the IRS

---

[5] Movants also contended that the entire value of the Debtors' assets on Schedule B ($48,635) could not be taken into account in the determination of the amount of the IRS secured claim. According to Schedule B, $25,100 of that amount was attributable to a 2007 Nissan Ultima which had secured debt against it of $22,500, leaving very little unencumbered value. In addition, the personal property listed in Schedule B included Kersner's interest totaling $16,500 in 401(k) plans, which were exempt from process. *Id*. Many of the remaining assets also were listed as exempt by the Debtors.

tax lien claim was therefore a secured claim equal to the value of the contract. Debtors contended that, because the IRS tax claim was secured in an amount equal to the value of the contract, the Debtors' total unsecured debt would be reduced to an amount below the limit of §109(e).

At the conclusion of the hearing, the Court granted the motion to dismiss, ruling that the schedules established that Kersner was ineligible to be a Chapter 13 debtor under §109(e). The Court did not take into account the purported value of the employment contract because the contract was not listed as an asset on schedule B, no value was attributed to it on schedule B, and the Debtors had not even presented it at the hearing. In its ruling, the Court stated that, even if the employment contract could be characterized as an asset, the Court was skeptical that the contract could have substantial present value given the number of contingencies that had to occur before Kersner would receive value from the contract.

On September 8, 2008, the Debtors amended Schedule B and filed a motion to reconsider the order of dismissal. The amended Schedule B listed as an asset "Employment contract for 2008 and 2009 (base salary 120,000 per year plus bonus)." *See* Docket No. 36, p. 4. It listed the contract's value as $160,000, which was based on $10,000 per month for the remainder of 2008 and $120,000 for 2009. In the motion to reconsider, the Debtors argued that the employment contract was an asset of the estate and was subject to the tax lien claims of the IRS and the state of Maryland, and therefore those claims were secured claims equal to $160,000 (the value of the contract), and not unsecured claims, thus bringing the Debtors under the §109(e) limit for unsecured debt.

6

On September 12, 2008, Movants filed an opposition to the motion to reconsider. In it they contended, among other things, that the issue of whether the IRS held a current lien on Kernser's future salary under the contract was governed by the Fourth Circuit opinion of *In re Avis*, 178 F.3d 718 (4th Cir. 1999). There, the Fourth Circuit addressed the question of whether an IRS lien attaches to postpetition property. It stated that, once properly filed, the IRS has a

> lien in all of [the debtor's] property in existence at the time the bankruptcy petition was filed and an inchoate lien in property that [the debtor] might thereafter acquire, such as his inheritance…. But the IRS's inchoate lien in the inheritance could not be perfected until [the debtor] actually received the inheritance. Thus only when [the decedent] died …, conveying an inheritance to [the debtor], could the IRS lien become perfected; the lien could not attach to the inheritance until it came to [the debtor].  But at the same time it came to [the debtor], it also became property of the bankruptcy estate…and thus became subject to the provisions of the §362 automatic stay. Accordingly, we must determine whether §362 stays the perfection of the IRS's lien at the time the estate received the inheritance even though the lien would otherwise have become "perfected" as a matter of law.

*Avis*, 178 F.3d at 722.  The court went on to determine that §362 bars the perfection of the IRS lien.

In applying *Avis* to the instant case, Movants contended that the IRS lien could not attach to wages due under the contract until Kersner received those wages, which are property of the estate under §1306(a)(2).  Movants contended that the employment contract, which had not been produced to Movants, was not an asset of the estate to which the IRS tax lien could attach, and therefore did not result in the tax claims being secured claims.  As a result, Movants argued, the IRS claim was unsecured and the Debtors' unsecured debt remained substantially in excess of the statutory limit of §109(e).

At the same time Movants filed their opposition to the motion to reconsider on September 12, 2008, they served Debtors and their counsel with a second motion for sanctions ("Second Sanctions Motion").  In that served but unfiled motion, Movants contended that Debtors violated Bankruptcy Rule 9011 by filing the motion for reconsideration.  The motion for sanctions cited the *Avis* case as well as several other theories that supported Movants' contention that the motion for reconsideration was without merit and filed solely for the purpose of delay.

The Court held a hearing on the motion to reconsider on November 5, 2008.  Kersner did not appear.  Debtors' counsel produced for the first time a document purportedly signed by Kersner on January 10, 2008.  He described the document as Kersner's employment contract with Management Dynamics, Inc.  The document was dubious on its face as an employment contract.  It was titled as an "Employment Plan," not a contract, and it stated that Kersner was provided "the ability to earn a base salary of $120K" for 2008 and 2009.  It stated that Kersner had certain sales quotas, but it never provided the payment Kersner would receive if he met some, all, or more of those quotas.  It further stated that Kersner could only be terminated for cause.  It was not signed by a representative from Management Dynamics.  It had odd spacing gaps throughout.  The sentence "The Director Global Alliance will not be terminated during the course of this two year plan, except for cause, as defined in the Employee Handbook" appears to be typed in a different font size than the rest of the document.  Despite the questionable appearance of the document, Debtors' counsel argued that it was Kersner's employment contract and, given that the contract's term extended through 2009, that it had a value of $160,000 ($10,000 per month for 16 months).  He further argued that the filed tax lien

gave the IRS a lien against Kersner's future wages under the contract. Therefore, he argued, the IRS claim should be treated as a secured claim in the amount of $160,000. In responding to the applicability of the *Avis* opinion, counsel simply acknowledged the argument was "a stretch." He provided no arguments as to why *Avis* was not applicable or otherwise not controlling.

The Court denied the motion to reconsider, concluding that the *Avis* opinion was directly applicable and that at most Kersner's employment contract had some nominal present value as of the petition date to which the IRS lien might attach.[6] Accordingly, applying *Avis*, the IRS's claim remained substantially unsecured and Kersner's total unsecured debt remained well above the §109(e) limit.

Movants filed both the First Sanctions Motion and the Second Sanctions Motion, along with a memorandum of points and authorities, on November 13, 2008 (Docket No. 46). The Debtors and their counsel opposed the motions. The Court held a hearing on these motions on February 24, 2009. At the hearing, at which Kersner did not appear, counsel for Movants produced two letters that he represented he had received from Management Dynamics, Inc. in response to a subpoena. The first is a copy of a letter dated October 28, 2005, signed by Kersner and the Chief Executive Officer of Management Dynamics. It appears to be, and was represented to Movants' counsel by Management Dynamics to be, the offer of employment from Management Dynamics that was accepted by Kersner. It provides that Kersner's base salary is $120,000.

---

[6] In *Avis*, the Court recognized that, although the IRS lien did not attach to the proceeds of the inheritance, it did attach to whatever value the inheritance had at the time of the petition. *Avis*, 178 F.3d at 724. In that case the petition date value of the inheritance was stipulated to be $1000. Here, the "contract" (assuming, as Kersner's counsel did, that it actually existed) may have had some value as of the petition date, but in light of the numerous contingencies that would have to be fulfilled before Kersner could realize any value from it – not the least of which was that he would remain employed – that value was nominal at best, and nowhere close to $160,000.

9

Significantly, and directly contrary to the alleged employment contract presented at the November 5, 2008 hearing, it states unequivocally that Kersner would be an at-will employee, and that the letter "is not an employment contract and should not be construed or interpreted as creating an implied or express guarantee of continued employment for any length of time." It went on to state that "the Company may terminate your employment at any time and for any reason, with or without cause or advance notice."

The second letter is a copy of a letter dated October 14, 2008, signed by the Chief Financial Officer of Management Dynamics and countersigned by Kersner on October 17, 2008. It states that Kersner's employment with Management Dynamics "has terminated effective October 31, 2008."[7] It provides that the company would pay Kersner through January 31, 2009.

Debtors' counsel did not object to the authenticity or admissibility of the letters or dispute their accuracy or effectiveness. Thus, the letters established that, at the time of the November 5, 2008 hearing at which Kersner's counsel argued that Kersner's employment contract should be valued at $160,000 because it provided that Kersner could only be terminated for cause and it had a remaining term of 16 months at $10,000 per month, the true state of affairs was: (1) the document that was presented in Court at the November 5 hearing was not the operative agreement between Kersner and his employer; (2) Kersner had no employment contract with Management Dynamics, but only an accepted offer of employment which created nothing more than an employment-at-will, and which expressly stated he could be terminated without cause; and (3) in any

---

[7] The Court notes that at the November 5, 2008 hearing on the motion to reconsider, Kersner's counsel stated that "My client is not here. His current employment requires him to do extensive traveling." Obviously that was not true, as Kersner's employment had already been terminated.

10

event, Kersner had already been terminated from employment at Management Dynamics well before the date of that hearing.

## II.  CONCLUSIONS OF LAW

**A.  The Standards Under Bankruptcy Rule 9011.**

>The Movants' seek sanctions under Bankruptcy Rule 9011(b), which provides:
>
>b) Representations to the court
>
>By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
>(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
>(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
>(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bkrptcy. P. 9011(b).  Because of the similarity between Bankruptcy Rule 9011 and Fed. R. Civ P. 11, "in deciding cases based on violations of Rule 9011, courts may look to cases that interpret Federal Rule of Civil Procedure 11." *In re Weiss*, 111 F.3d 1159, 1170 (4th Cir. 1997) (citation omitted).  "In determining whether a signatory violated Rule 11, the court must apply an objective standard of reasonableness." *Id.* (citing *Robeson Defense Comm. v. Britt (In re Kunstler),* 914 F.2d 505, 514 (4th Cir. 1990), *cert. denied* 499 U.S. 969 (1991)).

Subsections (b)(1), (b)(2), and (b)(3) are relevant to the instant case, and the Court now turns to a more detailed description of their elements.

### 1. Rule 9011(b)(1) – Improper Purpose.

The list provided in the rule sets forth a non-exclusive list of improper purposes, and "[t]he enumerated improprieties are examples only of the type of conduct proscribed by the Rule." *Carefirst of Md., Inc. v. First Care, P.C.*, 422 F.Supp.2d 592, 598 (E.D.Va. 2006). Improper conduct may therefore include a variety of behavior. "To harass or to cause unnecessary delay or needless increase in the cost of litigation" are merely examples provided in the rule. *Id.*

> If a complaint is not filed to vindicate rights in court, its purpose must be improper. However, if a complaint is filed to vindicate rights in court, and also for some other purpose, a court should not sanction counsel for an intention that the court does not approve, so long as the added purpose is not undertaken in bad faith and is not so excessive as to eliminate a proper purpose. Thus, the purpose to vindicate rights in court must be central and sincere. Filing of excessive motions may sometimes constitute "harassment" under the rule even if the motions are well grounded. Likewise, filing a motion or pleading without a sincere intent to pursue it will garner sanctions.

*In re Kunstler*, 914 F.2d at 518.

### 2. Rule 9011(b)(2) – Frivolous Claims, Defenses and Other Legal Contentions.

"An assertion of law violates Rule 11(b)(2) when, applying a standard of objective reasonableness, it can be said that a reasonable attorney in like circumstances could not have believed his actions to be legally justified." *In re Sargent,* 136 F.3d 349, 352 (4th Cir. 1998). "The legal argument must have absolutely no chance of success under the existing precedent to contravene the rule." *Hunter v. Earthgrains Co. Bakery,* 281 F.3d 144, 153 (4th Cir. 2002). "The proper analysis for frivolousness under Rule

9011 is whether an attorney conducted an adequate inquiry into the facts and the law *before* he filed the claim." *In re Community Management Corp. of Maryland*, 288 B.R. 104, 111 (D.Md. 2002) (citation omitted; emphasis added).

Monetary sanctions may not be imposed on a represented party for causing a violation of subdivision (b)(2), involving frivolous contentions of law, but only on the party's attorney. *Carefirst of Md.,* 422 F.Supp.2d at 606-607.

### 3. Rule 9011(b)(3) – Evidentiary Support for Allegations and Factual Contentions.

Factual allegations fail to satisfy Rule 11(b)(3) when they are "unsupported by *any* information obtained prior to filing." *Morris v. Wachovia Securities, Inc.,* 448 F.3d 268, 277 (4th Cir. 2006) (quoting *Brubaker v. City of Richmond,* 943 F.2d 1363, 1373 (4th Cir. 1991) (emphasis in original)). "[A] complaint containing allegations unsupported by *any* information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." *Kunstler,* 914 F.2d at 516 (emphasis added). This rule also empowers the district court to sanction a party or lawyer for "insisting [on] a position after it is no longer tenable." *Morris*, 448 F.3d at 279 (citing Fed.R.Civ.P. 11(b) Advisory Committee's Notes to 1993 Amendments).[8]

---

[8] Debtors do not dispute that Movants met the 21-day safe harbor provision of Bankruptcy Rule 9011. Bankruptcy Rule 9011(c)(1)(A) provides that a motion for sanctions may not be filed with the court unless it is first served on the opposing party, and "the challenged paper, claim, defense, contention, allegation or denial is not withdrawn or appropriately corrected" within 21 days after service. Fed. R. Bkrptcy. P. 9011(c)(1)(A). Here, Movants served the First Sanctions Motion and the Second Sanctions Motion before filing them, and did not file the motions until well after the 21-day period had run, during which time neither the Debtors nor their counsel withdrew or corrected the offending documents or arguments.

**B. The Application of the Standards**.

    **1. The First Sanctions Motion Should be Granted.**

In the First Sanctions Motion, Movants contend that sanctions are warranted under Bankruptcy Rule 9011(b)(1), (2), and (3) because, at the time Kersner filed the petition in this Chapter 13 case, the Debtors' schedules established that he owed noncontingent, liquidated claims in excess of the §109(e) limit for unsecured debt, and neither he nor his counsel had a reasonable argument or evidentiary support to establish Kersner's §109(e) eligibility.[9] Movants further contend that the case was filed simply to stay the Movants' garnishment of Kersner's wages, and that it had no prospect of success in Chapter 13. The Court agrees.

    The Debtors' Schedules E and F established that, as of the petition date, Kersner owed noncontingent, liquidated unsecured priority claims in the amount of $139,353.94 and noncontingent, liquidated unsecured nonpriority claims in the amount of $354,671.50. The Schedules are filed under penalty of perjury. These amounts greatly exceed the §109(e) limit of $336,900 for unsecured claims.

Further, Kersner, represented by the same counsel, was forced to convert Case No. 07-13148 from Chapter 13 to Chapter 11 based on his express recognition that his unsecured claims exceeded the §109(e) limit. And many of Kersner's unsecured claims in this case are the very same claims that led him and his counsel to recognize his ineligibility in Case No. 07-13148.

There is no dispute between the Debtors and the Movants that, at the time the Debtors filed the petition, Debtors' counsel told Movants that the §109(e) limit was

---

[9] As stated in note 2, Beatrice Kersner is not obligated on the Movants' claim, and so only Kersner's debts exceeded the §109(e) debt limit.

doubled for married, joint debtors.  As the unambiguous language of §109(e) makes clear, that position is not correct, and Movants informed Debtors' counsel of that in the First Sanctions Motion.  *See* Docket No. 46, p. 2, ¶¶ 6-7.  Thus, counsel had 21 days to review that legal contention and, in response, withdraw the petition or convert the case.  Debtors never asserted that position in Court or in a filing, but they did not withdraw the petition or convert the case.

Here, the Court draws a distinction between Kersner and his counsel.  With respect to counsel, at the time the petition was filed, the legal contention that Kersner was eligible for Chapter 13 under §109(e) was not warranted by existing law or by a nonfrivolous argument for any change in existing law.  Stated otherwise, a reasonable attorney in like circumstances could not have believed that Kersner's eligibility to be a Chapter 13 debtor was legally justified.  Accordingly, the Court will impose sanctions under Bankruptcy Rule 9011(b)(2) against counsel as provided below.

With respect to Kersner, the factual contention that Kersner's unsecured debt could be reduced below the §109(e) limit had no evidentiary support and was not likely to have evidentiary support after reasonable investigation.  Indeed, it appears to the Court that Kernser's testimony at the July 28, 2008 hearing – that he would soon be filing schedules that reduced his unsecured debt below the §109(e) limit – had no basis in fact.  Further, the Court concludes that this case was filed and maintained without justification so that Kersner could be relieved of the Movants' efforts to collect upon their nondischargeable claim, in particular, by maintaining the stay of the Movants' garnishment.  The Court concludes, therefore, that Kersner violated Bankruptcy Rule

15

9011(b)(1) and (3). Accordingly, the Court will impose sanctions against Kersner under Bankruptcy Rule 9011(b)(1) and (3), as described below.

### 2. The Second Motion for Sanctions Should be Granted.

In the Second Sanctions Motion, the Movants contend that the Debtors violated Bankruptcy Rule 9011 by filing the motion for reconsideration. Movants cite the *Avis* case as well as several other theories that support their contention that the motion for reconsideration was without merit and filed solely for the purpose of delay. Again, this Court agrees.

The motion for reconsideration was based on the contentions that Kersner's alleged employment contract had a value of $160,000 and that the IRS lien attached to it prepetition. These contentions were without merit. First, the *Avis* case established that the IRS lien would not attach to the wages earned under the contract until Kersner actually received the wages. Thus, no matter what the contract was worth, it could not serve as a basis for the IRS to hold a secured claim in the amount of the face value of the "contract." Indeed, counsel did not offer any argument for the inapplicability of *Avis*, either at the November 5 hearing or at any other time. Second, and more troubling to the Court, at the time of the hearing on the motion for reconsideration, Kersner had already been terminated from his employment from Management Dynamics, rendering the entire argument untenable beyond any doubt. Third, and even more troubling still, the document that Kersner, through his counsel, asserted was an employment contact was nothing of the sort, and the actual accepted offer of employment between Kersner and Management Dynamics expressly states that Kersener had no employment contract with the company. The document Kersner asserted was an employment contract appears to

16

have been fabricated by Kersner for the express purpose of deceiving the Court and the Movants.

The Court again will distinguish between Kersner and his counsel. The Court concludes that Kersner has committed a fraud upon the Court. He appears to have fabricated the so-called employment contract, which states that he could only be terminated for cause. In fact, there is no dispute that his actual employment with Management Dynamics was an employment-at-will arrangement under which he could be terminated at any time and for any reason. Further, he allowed his counsel to assert that the employment contract had a value based on a 16-month remaining term at a time when Kersner had already been terminated from his employment. Need it be said: Kersner violated Bankruptcy Rule 9011(b)(3). Further, the Court concludes that this case was filed and maintained without justification so that Kersner could be relieved of the Movants' efforts to collect upon their nondischargeable claim. The Court concludes, therefore, that Kersner also violated Bankruptcy Rule 9011(b)(1).

With respect to Kersner's counsel, the matter is not as clear. Counsel stated that Kersner gave him the so-called employment contract and did not inform him before the November 5 hearing on the motion to reconsider that he, Kersner, had been terminated from employment. The Court has no reason to reject either of these contentions. The question is whether a reasonable attorney in like circumstances would have believed the contentions that (1) Kersner's purported employment contract presented at the November 5 hearing had a value of $160,000; or (2) the IRS lien attached prepetition to the purported employment contract in an amount sufficient to render Kersner eligible under §109(e). The standard the Court applies is whether "the legal argument had absolutely no

chance of success under the existing precedent to contravene the rule." *Hunter,* 281 F.3d at 153. The Court concludes that the standard is met. First, the so-called employment contract was dubious on its face. *See* Findings of Fact, *supra*, p. 8. At the least, it raised serious questions that should have led to some reasonable inquiry of its validity. Second, the Court concludes that, in light of the *Avis* decision, no reasonable attorney in like circumstances would have concluded that the IRS lien attached to the contract prepetition in an amount even approaching $160,000.

Having determined that sanctions are warranted, the Court now turns to the amount and type of sanctions.

**D.  Appropriate Sanctions.**

Rule 9011(c) provides that if "the court determines that subdivision (b) has been violated, the court may, subject to [certain] conditions, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation." The specific limitations on the nature of the sanction(s) that may be imposed are set forth in subdivision (c)(2), which provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.
>
> (A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).
>
> (B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

Fed. R. Bankr. P. 9011(c).

The Court will award both monetary and nonmonetary sanctions. The Court has concluded that Kersner filed and maintained this case without justification in an effort to prevent the Movants from pursuing collection of their nondischargeable claim against him. In that he succeeded. Movants were stayed from collecting on the garnishment during Case No. 07-13148 and during this case. An appropriate sanction of such conduct by Kersner, "limited to what is sufficient to deter repetition," is to limit the effect any further bankruptcy filing will have on the Movants' collection efforts. Accordingly, the Court will enter an order providing that, for a period of thirty-six months, in the event any subsequent bankruptcy petition is filed by or against Kersner or any related party, no stay under §362 or §1301 will in any way preclude, limit or prohibit any efforts of Movants to collect their claim against Kersner.

The Court will also grant monetary sanctions. With respect to these, considering that the Movants hold a substantial unsatisfied judgment against Kersner, the Court has little doubt that any joint and several sanctions will be borne by counsel, rather than Kersner. Accordingly, the Court will impose separate sanctions on each, based on the Court's assessment of the degree of blame each bears for the offending actions or arguments.

With respect to counsel's actions, the Court will impose sanctions of $1500. While the Court does not find that counsel had any knowledge of Kersner's termination or the invalidity of the purported employment contract, the initial filing of the Chapter 13 petition and the contention that the IRS lien attached prepetition to the purported employment contract resulted in unnecessary loss and delay to the Movants.

With respect to Kersner, the Court will impose a sanction of $4000. This sanction is intended to reimburse Movants partially for their expenses in pursuing the First and Second Sanctions Motion, defending the motion to reconsider, issuing the subpoena to Management Dynamics, and appearing at the hearing on the sanctions motions. It is also intended to compensate them partially for Kersner's wages that were not garnished because of Kersner's actions.

### III.  CONCLUSION

For the foregoing reasons, the Court will enter an order granting sanctions as described herein.

**Copies to:**

Erik Soderberg, Esq.
30 West Gude Drive
Suite 450
Rockville, MD 20850

Steven and Beatrice Kersner
411 Oak Knoll Drive
Rockville, MD 20850

Julian Karpoff, Esq.
Karpoff & Title
P.O. Box 990
Arlington, Virginia 22216

Timothy Branigan, Trustee
P.O. Box 1902
Laurel, MD 20725-1902

### END OF MEMORANDUM